**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| SPENCER PIERCE,<br><br>      Plaintiff,<br><br>vs.<br><br>DIRECTORS OF NEVADA DOC, et al.,<br><br>      Defendants. | 3:07-CV-202-RCJ (RAM)<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment. (Doc. #60.[1]) Plaintiff has opposed (Doc. #74), and Defendants have replied (Doc. #81). After a thorough review, the court recommends that the motion be granted.

## I. BACKGROUND

At all relevant times, Plaintiff Spencer Pierce was in the custody of the Nevada Department of Corrections (NDOC). Plaintiff is an Iowa inmate who resides at Ely State Prison (ESP) in Nevada by way of an interstate corrections compact. (Pl.'s Third Am. Compl. 9 (Doc. #30).) Plaintiff, a *pro se* litigant, brings this action pursuant to 42 U.S.C. § 1983. Defendants are E.K. McDaniel, the Warden at ESP; Dr. Bruce Bannister, the Medical Director for the NDOC; Joseph Brackbill, the Director of Nursing at ESP; Howard Skolnik, the Department Director; and Dr. Richard Long. On September 9, 2008, Plaintiff filed a third amended

---
[1] Refers to court's docket number.

complaint seeking monetary and injunctive relief against Defendants in their individual and official capacities.

In Count I, Plaintiff claims that prison officials have manifested a deliberate indifference to his serious medical needs in violation of the Eighth Amendment by refusing him treatment to his injured left fifth finger. (Pl.'s Compl. 4.)

In Count II, Plaintiff alleges that prison officials have manifested a deliberate indifference to his serious medical needs in violation of the Eighth Amendment by failing to treat his shoulder and chest injury. (*Id.* at 5.)

In Count III, Plaintiff alleges that prison officials have denied him access to the courts in violation of the First Amendment by denying him access to Iowa law. (*Id.* at 6.)

Defendants move to dismiss because Plaintiff has failed to exhaust the available administrative appeals or for summary judgment because Plaintiff cannot prove a legal element in each of his claims. (Defs.' Mot. for Summ. J. 2 (Doc. #60).)

## II. ADMINISTRATIVE EXHAUSTION

**A.    LEGAL STANDARD**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the

2

agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003), *cert. denied*, 540 U.S. 810 (2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

For prisoners within the NDOC system, exhaustion of administrative remedies requires complying with the Inmate Grievance Procedure set forth in NDOC Administrative Regulation 740 (AR 740). The administrative process consists of: (1) an Informal Level grievance that is reviewed and responded to by an inmate caseworker; (2) a First Level formal written grievance appealing the informal grievance decision to the warden at the institution where the inmate is housed; and (3) a Second Level grievance appealing the First Level grievance decision, which is decided by the Assistant Director of Operations. (Defs.' Mot. for Summ. J., Ex. A, at 10-11 (AR 740.02 § 1.1.1.1 (effective 1/5/05)).) If an inmate disagrees with the response to any grievance, he may appeal the grievance to the next available level within the prescribed deadlines. (*Id.* at 11 (§ 1.1.1.4).)

///
///

**B.    DISCUSSION**

Defendants argue that Plaintiff has failed to exhaust his administrative remedies with respect to all claims. (Defs.' Mot. for Summ. J. 10.)

**1.    Count I and Count II**

In regard to Plaintiff's finger injury, Defendants assert that Plaintiff's initial filing and subsequent appeals of grievance number 2007-24-691 were untimely. (Defs.' Mot. for Summ. J. 11.) Although the record shows that Plaintiff failed to comply with NDOC grievance deadlines, NDOC officials nevertheless reached the merits of Plaintiff's grievance at all levels of review. *(Id.* at 11, Ex. C-1.) Therefore, Plaintiff has met the "merits test" and has properly exhausted his administrative remedies as to Count I.

Just as with Count I, Defendants claim in Count II that Plaintiff failed to timely file the grievance addressing his shoulder injury, grievance number 2007-24-617. (Defs.' Mot. for Summ. J. 12.) Despite Plaintiff's untimely filing and appeals, NDOC officials also reached the merits of this grievance at all levels. (*Id.*, Ex. C-2.) By meeting the "merits test," Plaintiff has properly exhausted his administrative remedies as to Count II.

**3.    Count III**

Plaintiff filed grievance number 2007-24-2372 on February 4, 2007, claiming that his inability to access Iowa law impeded his access to the courts. (Defs.' Mot. for Summ. J., Ex. C-3.) On February 12, 2007, Plaintiff received NDOC's response denying his grievance. (*Id.*) Plaintiff filed his first-level appeal on September 11, 2007, which NDOC officials, without reaching the merits, rejected as untimely. (*Id.*) Defendants argue Plaintiff failed to exhaust his administrative remedies as to Count III because of his untimely appeal. The court agrees. According to Administrative Regulation 740.02 § 1.3.4., an inmate must file an appeal to the first level within five days of receiving a response to an informal grievance. (*Id.*, Ex. A at 15.) Plaintiff filed his appeal over six months after receiving the response, thereby failing to comply with NDOC's deadlines. Unlike Count I and Count II, NDOC officials did not reach the merits of Plaintiff's grievance pertaining to Count III. Thus, as to Count III, Defendants have shown

4

that Plaintiff failed to meet either the "merits test" or the "compliance test." Accordingly, Count III of Plaintiff's complaint should be dismissed without prejudice because of failure to exhaust administrative remedies.

### III. SUMMARY JUDGMENT

**A.  LEGAL STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi*, 84 F.3d at 1197. In doing so, the court must defer to the professional judgment of prison administrators when an inmate civil rights complaint is involved. *Beard v. Banks*, 548 U.S. 521, 526, 530 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S. at 248. Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for

summary judgment. Fed. R. Civ. P. 56(c).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.    DISCUSSION**

Defendants argue that they are entitled to summary judgment on Plaintiff's claims for deliberate indifference to serious medical needs because Plaintiff is unable to meet the standard for deliberate indifference on either claim. (Defs.' Mot. for Summ. J. 13.)

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's responses to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992). A "serious" medical need exists if the failure to treat a prisoner's condition could lead to further injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). Examples of conditions that are "serious" in nature include an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, a medical condition that significantly affects an individual's daily activities, or the existence of chronic and substantial pain. *McGuckin*, 974 F.2d at 1060; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

6

If the medical needs are serious, the plaintiff must show that the defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Tougchi v. Soon Hwang Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). The plaintiff must demonstrate that the prison medical staff knew of and disregarded an excessive risk to his health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Tougchi*, 391 F.3d at 1061. Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs, Inc. v. Miller*, 104 F.3d 1133, 136 (9th Cir. 1997). Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk" to an inmate's health and safety. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 858 (1994)). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hamilton v. Endell,* 981 F.2d 1062, 1066 (9th Cir. 1992); *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (citations omitted). Where delay in receiving medical treatment is alleged, however, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

**1.    Count I**

In his third amended complaint, Plaintiff alleges that Defendants refused to provide him treatment for his injured left pinky finger in violation of the Eighth Amendment. (Pl.'s Compl. 5-6.) While incarcerated in Iowa, two surgeries were performed on Plaintiff's finger. (*Id.* at 5.) Following the surgeries, an orthopedist prescribed medical tape so that Plaintiff could "buddy tape" his pinky finger to his fourth finger. (*Id.*) The medical tape was confiscated from Plaintiff when he was transferred to ESP in 1999 because of the security risk posed by the use of tape in fashioning prison-made weapons. (*Id.*; Defs.' Mot. for Summ. J. Ex. D (Decl. of E.K.

1 McDaniel).) In either 2003 or 2005,[2] Plaintiff re-injured his pinky while getting down from
2 the top bunk. (Pl.'s Compl. 5.) From August 2005 to February 2006, medical personnel
3 examined Plaintiff's finger, ordered x-rays, and discussed treatment options with Plaintiff.
4 (Defs. Mot. for Summ. J. Ex. F at 74, Ex. H at 85-88.) Plaintiff claims that Dr. Long refused
5 to recommend treatment for Plaintiff's pinky because Dr. Long believed Plaintiff's injury was
6 not something that an inmate should have repaired in prison. (Pl.'s Compl. 5.) Plaintiff asserts
7 that all Defendants were aware of his finger injury and refused to provide any type of
8 treatment. (*Id.* at 6.) Because his finger is unsupported, Plaintiff claims he has endured a lot
9 of pain and now has arthritis in the joint of the finger. (*Id.*)

10 Defendants argue that they are entitled to summary judgment because Plaintiff cannot
11 show that his finger injury is a "serious medical need" or that Defendants acted with deliberate
12 indifference. (Defs.' Mot. for Summ. J. 14-15.)

13 Assuming Plaintiff's medical needs were "serious," the court finds that the challenged
14 conduct does not rise to the level of deliberate indifference. Medical records indicate that
15 Plaintiff first mentioned his finger injury to medical personnel in August 2005. (Defs.' Mot.
16 for Summ. J. Ex. F at 74-75.) Plaintiff was referred to Dr. Long, an orthopedist, who examined
17 Plaintiff on November 16, 2005. (*Id.* Ex. H at 88.) Plaintiff reported to Dr. Long that he did
18 not have much pain, except with certain motions. (*Id.*) Dr. Long took x-rays of Plaintiff's
19 finger and consulted with another doctor on possible treatments for Plaintiff. (*Id.* Ex. H at 86-
20 87.) On February 1, 2006, Dr. Long discussed surgical and non-surgical treatment options with
21 Plaintiff. (*Id.* Ex. H at 85.) Because of deterioration in the joint of the finger, Dr. Long
22 recommended that Plaintiff either have the joint fused or the finger removed and that Plaintiff
23 should use tape to stabilize the finger. (*Id.*)

24 / / /

---

[2] Plaintiff's complaint indicates that he injured his pinky in "Late 05" (Pl.'s Compl. 5); however, Plaintiff's medical records state that he injured his finger in 2003. (Def.s Mot. for Summ. J. Ex. H at 88.)

8

Because inmates are not allowed to possess tape themselves, medical staff will tape the injury if it requires medical tape. (Defs.' Mot. for Summ. J. Ex. D.) Medical staff will tape the injury as needed and will confiscate all used tape so that it cannot be used for an improper purpose. (*Id.*) Between February 1, 2007, and May 28, 2008, Plaintiff saw medical personnel more than thirty times for a variety of medical ailments. (*Id.* Ex. F at 58-78.) Plaintiff only made mention of his finger injury and requested a splint once on May 28, 2008, despite the numerous opportunities available for him to request that medical staff tape his finger. (*Id.* Ex. F at 59.) Plaintiff received a strip of tape for his finger sometime before September 17, 2008. (Pl.'s Opp. to Summ. J. Ex. L-1 (Doc. #74).)

Plaintiff argues that a letter sent to Defendants McDaniel, Skolnik, and Brackbill in March 2008 and his grievance submitted in January 2007 put Defendants on notice of the inadequate treatment he was receiving for his finger. (Pl.'s Opp. to Summ. J. 9-10.) Additionally, Plaintiff claims that while he received tape from September to early November 2008, he was not provided tape from mid-November to February 2009. (*Id.* 10, Ex. L-1 to L-6.) While this delay in treatment may constitute indifference, indifference must be "substantial" before it is actionable under the Eighth Amendment. *Broughton v. Cutter Laboratories*, 622 F.2d 458, 450 (9th Cir. 1980). In particular, the inmate's condition should present an "excessive risk" to health or safety, which an injured pinky finger that causes pain with certain motions does not. There is no evidence of any permanent damage to Plaintiff's finger, and he eventually received care to satisfy his medical needs. While the court is somewhat troubled by the prison's failure to respond to Plaintiff's letter and grievance with more timeliness, even gross negligence is not sufficient to establish a constitutional violation. *Tougchi v. Soon Hwang Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Therefore, Defendants' motion for summary judgment should be granted dismissing the Eighth Amendment claim in Count I.

///
///
///

### 2. Count II

In Count II, Plaintiff contends that Defendants failed to properly treat his chest and shoulder injury in violation of the Eighth Amendment. (Pl.'s Compl. 7.) Prior to arriving at ESP, Plaintiff injured his pectoralis major while lifting weights. (*Id.*; Defs.' Mot. for Summ. J. Ex. H at 85.) Dr. Long examined Plaintiff on February 1, 2006. (Defs.' Mot. for Summ. J. Ex. H at 85.) Plaintiff reported that he experienced soreness and bruising when exercising, and Dr. Long diagnosed Plaintiff's injury as a "classic pectoralis major tear." (*Id.*) Dr. Long informed Plaintiff that, according to Dr. Long's research, "nothing should be done, if it is not done in the first 3-4 weeks." (*Id.*) On February 5, 2006, Plaintiff wrote a letter to the NDOC Medical Director expressing his disagreement with Dr. Long's opinion, requesting a new Magnetic Resonance Imaging (MRI) be taken of his shoulder, and requesting the old MRI of his shoulder be obtained from Iowa. (*Id.* Ex. K at 94.) Dr. Bannister responded to Plaintiff's letter on March 21, 2006, concurring with Dr. Long's opinion and informing Plaintiff that he could sign a medical release to allow his MRI records to be sent to Nevada. (*Id.* Ex. K at 95.) Plaintiff submitted a grievance regarding the medical treatment of his shoulder on January 9, 2007. (*Id.* Ex. C-2 at 42.)

Plaintiff alleges that Dr. Long stated that it would be a waste of time and money to take a new MRI and that an inmate should not have this type of injury repaired while in prison. (Pl.'s Compl. 7.) Plaintiff claims that Defendants were deliberately indifferent to his medical needs associated with his chest and shoulder injury by failing to obtain his old MRI, failing to order a new MRI, and refusing Plaintiff further treatment. (*Id*; Pl.'s Opp. to Summ. J. 10-11.)

Defendants argue that Dr. Long's failure to order further diagnostic tests does not constitute deliberate indifference. (Defs.' Mot. for Summ. J. 16.) The court agrees. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981); *see also Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996 (explaining that "a plaintiff's showing of nothing more than 'a difference of medical opinion'

10

as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference"). Furthermore, as explained by the Supreme Court:

> [T]he question whether an X-ray - or additional diagnostic techniques or forms of treatment - is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice . . .

*Estelle v. Gamble*, 429 U.S. 97, 107 (U.S. 1976). Here, Plaintiff argues that Dr. Long did not recommend further treatment for his shoulder based on non-medical factors. (Pl.'s Opp. to Summ. J. 11.) Plaintiff, however, presents no evidence to support this allegation. Because Plaintiff merely presents evidence supporting a disagreement with Dr. Long's medical opinion, Defendants are entitled to summary judgment on Count II.[3]

### III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **<u>GRANTING</u>** Defendants' Motion for Summary Judgment (Doc. #60) as follows:

- Count III should be dismissed without prejudice;
- The motion for summary judgment on Count I and Count II of the complaint should be granted.

**IT IS FURTHER RECOMMENDED** that the District Judge enter an Order **<u>DENYING AS MOOT</u>** Plaintiff's Motion for Preliminary Injunction. (Doc. #87.)

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

///

---

[3] The court does not find it necessary to consider the remaining defenses raised by Defendants at this time.

11

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: October 27, 2009.

_____
UNITED STATES MAGISTRATE JUDGE